[Filed November 3, 1886.]
## A. J. LAWRENCE v. J. C. LAWRENCE.

CONVEYANCE—REAL ESTATE—POSSESSION.—Where a father takes a deed to land in the name of his infant son, goes into possession and improves said land, his possession is the possession of the son.

SAME—STATUTE OF FRAUDS — RESULTING TRUST.—Where it is claimed that the property in controversy was purchased by the husband of the defendant under an agreement that the deed should be taken in her name, but it appears there was no writing ; that the purchase price was paid wholly by the former, as also the cost of all improvements, and the premises were occupied by all the parties as a family residence ; such facts furnish no foundation to support such claim.

HUSBAND AND WIFE — MARRIED WOMAN'S SEPARATE ESTATE.— Under the laws of this State in 1864, a husband and wife could not contract with each other, unless respecting the wife's separate property.

STATUTE OF LIMITATIONS.—Where the title to land is in an infant, and his mother, with whom he lives, occupies the premises as a family residence, receipts for rents and lists the property for taxes in the name of the owner, and in various other ways, up to the time the suit is commenced, explicitly recognizes his title, on no occasion setting up or claiming title in herself: under such circumstances her possession was not adverse, and the statute of limitations never began to run.

MULTNOMAH COUNTY.    Defendant appeals.    Affirmed.

*Emmett B. Williams* and *O. P. Mason,* for Appellant.

*M. C. George* and *B. Killin,* for Respondent.

STRAHAN, J.—This suit was brought to quiet the title to certain real property situate in the city of Portland.   The complaint alleges that the plaintiff is the owner in fee of said premises, and that, through himself and his tenants, he has been in the actual possession of said premises ever since July 6, 1864.    The complaint then sets up various acts and claims of the defendant, whereby she attempted to assert some right to said property, and alleges the same to be wrongful.   The answer denies the material allegations of the complaint.

By way of further defense the answer then alleges that J. R. Lawrence, the plaintiff's father, was, on the 6th day of July, 1864, and is now, the husband of the defendant ; and that on said day and for many years after, he and the defendant lived and cohabited together as husband and wife ; that about said

day said lots were purchased as a home for and as the separate property of the defendant, by agreement and understanding between J. R. Lawrence and defendant, this defendant paying a part of the purchase price, and relying upon the said J. R. Lawrence to have said property deeded to the defendant, and believing that said property was her sole and separate estate; that pursuant to said understanding and agreement, so made by the said J. R. Lawrence with this defendant, she took possession thereof, and by her own labor earned divers large sums of money, which she in good faith turned over to her said husband in payment of the purchase price; and that she in good faith made valuable improvements, built houses and fences, graded the streets and improved the same, and paid the taxes and street assessments, and thereby expended large sums of money upon said property, and bestowed care, labor and attention, all of which was and is of the value of several thousand dollars, an exact account of which the defendant cannot give; and that much of the paper evidence thereof is now in the possession of the plaintiff; and that said J. R. Lawrence wrongfully, unlawfully, fraudulently and without the knowledge of this defendant, and for the purpose of cheating and defrauding her out of her just rights, and out of her property and home, and her estate in the said lots, procured the said lots to be deeded by J. H. Hayden and wife to the plaintiff herein, who was then an infant less than two and a half years old, having no estate whatever, and who did not pay anything whatever therefor; that since said purchase as aforesaid plaintiff has not made, or caused to be made, any improvements thereon, nor made any himself, nor paid any taxes; that said J. R. Lawrence and plaintiff have allowed defendant to expend her labor and money upon the said property, believing that she had a legal and equitable interest therein, as aforesaid.

The answer then contains a plea of the statute of limitations.

And for a further defense the answer then pleads that the legal title to said property is in J. R. Lawrence, the husband of defendant; and that in 1873 he acquired title in trust for the defendant, of one Charles M. Carter, who was then the legal

owner of said property; and that said J. R. Lawrence fraudulently, and with the intent to cheat this defendant and defraud her of her rights, procured the legal title to be deeded to himself, and thereby became the trustee of defendant; that the defendant is the owner of said property ; that she had been in the exclusive possession of the same, claiming to own it, and holding it adversely to the plaintiff for more than eighteen years last past.

The reply presented proper issues on the new matter in the answer. A supplemental answer was afterwards filed, alleging in substance that the defendant had procured a decree of divorce against J. R. Lawrence, and that the court had by the same decree vested in the defendant all the title of J. R. Lawrence in the premises in controversy.

The evidence was taken by deposition, and this cause is now before us to be tried anew upon the transcript and evidence accompanying it.

The plaintiff is entitled to the relief prayed for, unless his right thereto is defeated by the matters alleged in the answer, or some of them. It is true, his right is contested by the defendant on the further ground insisted upon at the trial, that his predecessor had no title, and therefore the deed to the plaintiff gave him none. However that may be, it is too late to call it in question. Jos. R. Lawrence, as well as the defendant and the plaintiff, entered under the deed from Hayden, made in 1864 ; and without stopping to discuss the character of their possession as between themselves at this time, it is sufficient to say that possession was adverse and hostile to every other title or interest, and extinguished them all, long before the commencement of this suit.

The defense mainly relies upon two facts. (1) The alleged contract respecting the purchase of the property in 1864, between Jos. R. Lawrence and the defendant, who was then his wife ; and (2) The statute of limitations. We will examine these defenses briefly as they are presented by the evidence.

And first, as to the contract alleged. It was substantially that Joseph R. Lawrence said to the defendant, that " this

piece of property was for sale. Hayden had it; we didn't have enough money to pay for it all, so he went and borrowed $150 or $200 of the priest that was at the Sisters' School at the time, and bought it. Now, he says, if you will economize we can pay that note off. I was working then for different parties. It was to be my home, to get away from that old Catholic bell—all the time a-ringing. That's what he said. I managed it and collected the rent all the time from the time the first house was put up." Lawrence caused the deed from Hayden to be made to the plaintiff, which deed was duly recorded in Multnomah County soon after its execution. These two lots were unimproved at the time of the purchase, but soon thereafter Jos. R. Lawrence commenced to improve them, and we entertain no doubt whatever that all the improvements placed on said property, up to the time Jos. R. Lawrence left Oregon, were made and paid for by him. Lawrence's possession, therefore, was the possession of the plaintiff, who was then an infant. Besides, the alleged agreement between Lawrence and his wife touching the property at the time of its purchase from Hayden is denied by Lawrence, and we think the circumstances surrounding the transaction at the time, as well as the defendant's conduct and admissions thereafter, show most conclusively that her present claim is an afterthought. Taking the defendant's statement of this contract in its strongest terms, and it could be the foundation of no claim to this property. She paid nothing to Lawrence, there was no writing, no possession, and the money paid for improvements was not hers. It appears that the money was all paid and advanced by Lawrence, both for the purchase of the property and the improvements. In addition to these objections, a husband and wife could not contract with each other in Oregon at the time it is claimed this contract was made, unless it was respecting the wife's separate property, and this property was not of that character. Nor is the plea of the statute of limitations sustained by the evidence. It satisfactorily appears from the evidence that the defendant moved upon the land in question with her husband, Jos. R. Lawrence, soon after the first

house was built. This was within a year or two after the property was purchased. Lawrence testifies that he was in possession himself constantly, from the time he purchased up to the time he left Oregon, and that his possession was under the plaintiff's title, and that he held the possession for the plaintiff up to that time, and when he went away he left the defendant on said premises, with whom the plaintiff then resided. The defendant's entry was, therefore, not hostile to the plaintiff's title, but in strict subordination thereto, and it never became adverse. This view of the character of the defendant's possession harmonizes with the defendant's conduct respecting the same after Lawrence left Oregon, as well as with her own declarations on the subject. On the 1st day of February, 1885, the defendant and one J. S. Coulter, a tenant, had a settlement respecting the rent of one of the houses on said premises, at which time she gave Coulter a receipt for $30, in full for rent till March 1st, 1885, and signed to said receipt, not her name, but the plaintiff's. In the year 1883, the defendant visited the county assessor's office of Multnomah County, for the purpose of listing the property in dispute, for taxation for that year. The assessor furnished her the usual blank for that purpose, and she instructed him to fill said blank with the name of Albert J. Lawrence, the plaintiff, which he did, and she then, with her own hand, signed his name at the bottom thereof, as owner. In addition to these acts, which cannot be reconciled with her present theory, her daughter Susie Stephenson, and James Rankin, Mrs. Wasserman, Jos. R. Lawrence, Jas. W. King, Wm. Winter, Mr. Shultze, Mrs. Shane, Mrs. Coulter and several other witnesses, all testified fully and clearly to the declarations of the said defendant, admitting in the most explicit manner that the plaintiff was the owner; and on none of these occasions setting up or claiming title in herself. And these declarations were continued till after the plaintiff's return from Australia, when she introduced him to some of the tenants as their future landlord. Under such circumstances the statute of limitations never commenced to run, for the reason that the defendant's possession was not adverse in its inception and it never became so.

XIV. OREG.—6.

Having reached these conclusions, it is unnecessary to no-- tice the other points argued. It follows that the decree of the court below must be affirmed—the other judges concurring.